IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LARRY E. FIELDS, JR.                :
(AIS# 193905),                      :
                                    :
    Plaintiff,                      :
                                    :
vs.                                 :    CIVIL ACTION 12-0625-WS-M
                                    :
CHARLES E. SHERMAN                  :
                                    :
    Defendant.                      :

**REPORT AND RECOMMENDATION**

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the motion for summary judgment of Defendant Dr. Charles E. Sherman (Doc. 38) and Plaintiff's opposition thereto (Doc. 39). For the reasons stated below, it is recommended that the motion for summary judgment of Defendant Dr. Charles E. Sherman be granted and that Plaintiff's action against Defendant Sherman be dismissed with prejudice.

**I.   BACKGROUND**

Upon intake at Baldwin County Sheriff's Corrections Center ("BCSCC")[1] on April 15, 2012, Plaintiff, Larry E. Fields, notified the jail that he was HIV positive.[2] (Doc. 27 at 1). Within five days of his incarceration, he was placed on a special diet due to his HIV status.[3] (Doc. 21-2 at 2; Doc. 36-1 at 22; Doc. 21-2 at 79). On April 27, 2012, Plaintiff was examined for "breakouts" on his

---

[1] Throughout this action, the Baldwin County jail where Plaintiff was incarcerated has been called by various names, such as Baldwin County Correctional Facility (Doc. 4), Baldwin County Corrections Center (Doc. 15), Baldwin County Detention Center (Doc. 19), and Baldwin County Correction Center (Docs. 21, 42). It appears from the affidavits of Sheriff Mack and Captain Bennett that the proper name is Baldwin County Sheriff's Corrections Center (Docs. 33-1, 33-2 and 33-3).

[2] The exact date of Plaintiff's diagnosis of HIV is uncertain, but it was sometime in 2003 or 2004. (See Doc. 33-4 at 8-9 (where Plaintiff gives two different 2004 dates for the onset of HIV) and Doc. 21-2 at 46 (where Plaintiff states he was diagnosed as HIV positive as early as 2003)). He first received medical treatment at Mobile County Health Department in 2005 and University of Alabama at Birmingham's 1917 Clinic in 2007. (Doc. 21-2 at 127). Until the events detailed in this lawsuit, Plaintiff's CD4 count remained above the 200-count threshold and preserved the need for any HIV drug therapy. (Id.).

In addition to HIV, Plaintiff suffers from genital herpes, hepatitis B, and depression and received treatment for these and other ailments, such as foot fungus, many times while incarcerated at BCSCC. (See Doc. 21-2 at 44; Doc. 27-1-2 at 4; Doc. 33-4 at 5; Doc. 34-1 at 5-9, 11-17; Doc. 35-1 at 19; Doc. 36-1 at 2-3, 5-7; 19-22).

[3] A 2,400 calorie diet, including a night time snack, was ordered for Plaintiff. (Doc. 21-2 at 79). The only complaints ever filed regarding Plaintiff's HIV treatment, or lack there of, at BCSCC were three grievances insisting the diet was inadequate because the portion sizes were too small. (Doc. 36-2 at 2-5).

2

face and an ingrown hair was observed and cleaned. (Doc. 36-1 at 16). On May 6 and 7, 2012, Plaintiff complained of an abscess and swelling on his chin and throat area that he reported had been present for eight days. (Doc. 36-1 at 13). Defendant Dr. Sherman drained the abscess and prescribed antibiotic treatment.[4] (Doc. 21-2 at 59). At this visit, Dr. Sherman also noticed two small exudates in Plaintiff's throat. (Doc. 21-2 at 59). Following Dr. Sherman's discovery, Plaintiff was referred to an HIV specialist on May 8, 2012. (Doc. 36-1 at 8).

Plaintiff was examined at the HIV Clinic on June 14, 2012. (Doc. 21-2 at 127-129). He reported no symptoms of tiredness, fever, headaches, chest pain, depression, or skin lesions to any of the HIV Clinic staff, nor were any symptoms noticed by the examining medical professionals. (Id. at 127). No HIV related medications or drug therapy were prescribed by the clinic and all blood work and laboratory analyses were postponed; Plaintiff returned to BCSCC and was scheduled a follow up appointment with the clinic. (Id. at 129). However, Plaintiff was transferred from the custody of BCSCC to the Alabama Department of

---

[4] Plaintiff received a course of antibiotic treatment for the abscess that began to work immediately. (Doc. 36-1 at 12-13). It was noted that the wound began to heal after the first dose of antibiotics and that Plaintiff's pain went from a 10 (on a scale from 1-10) to a one. (Id.).

3

Corrections prior to his scheduled follow up date at the HIV Clinic. (Doc. 21-2 at 132).

Plaintiff filed this action on October 1, 2012, claiming that Dr. Sherman denied him proper medical treatment and care.[5] (Doc. 1 at 5-6). Dr. Sherman filed an answer to Plaintiff's complaint, and the answer and special report were converted to a motion for summary judgment. (Docs. 21-22, 38). Plaintiff responded to the motion and objected to the dismissal of Defendant Dr. Sherman.[6] (Doc.

---

[5] Plaintiff's complaint also named Jimmy Bennett and Huey "Hoss" Mack as defendants for failing to provide adequate medical care. (Doc. 1 at 5-6). Defendants Bennett and Mack answered the suit and filed a special report with the Court. (Docs. 33-38). Defendants' pleadings, along with Defendant Dr. Sherman's, were converted to a motion for summary judgment. (Doc. 38). Plaintiff's response to the motion voluntarily dismissed Defendants Bennett and Mack. (Doc. 39). Thus, this § 1983 action is proceeding solely against Defendant Dr. Sherman. (See Doc. 41).

[6] Plaintiff alleged that Defendant Dr. Sherman's special report lacked an essential piece of evidence, a report from the HIV clinic he visited on June 14, 2012. (Doc. 39 at 2). The Court ordered that Defendant produce all records relating to Plaintiff's HIV clinic examination. (Doc. 40). Dr. Sherman complied with the Court's order and affirmed that Baldwin County Correctional Center is the legal custodian of all his medical records and that his previously submitted special report "contain[ed] all of the documentation relating to the treatment of Plaintiff by Dr. Sherman at the BCCC . . . . There are no other BCCC records, and those Mobile County HIV Clinic records contained *within* the BCCC records are the only Mobile County HIV Clinic records that the BCCC possessed." (Doc. 42 at 1-2).

4

39). Defendant Dr. Sherman's motion for summary judgment and Plaintiff's response thereto are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. See Stabler v. Fla. Van Lines, Inc., No. 11-0103-WS-N, 2012 WL 32660, *5 (S.D. Ala. Jan. 6, 2012) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)). Summary judgment is proper when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks

omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." AGSouth Genetics, LLC v. Cunningham, No. 09-745-C, 2011 WL 1833016, *2 (S.D. Ala. May 13, 2011).

**III.    LAW & ANALYSIS**

Plaintiff alleges in his complaint that he was denied treatment, in violation of the Eighth Amendment, for HIV which caused him to develop AIDS. The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999)

7

(citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

*Sims*, 25 F.3d at 983 (citing *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)).  To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need.  Farrow, 320 F.3d at 1243.  "Deliberate indifference" entails more than mere negligence.  Estelle, 429 U.S. at 106; Farmer v. Brennan, 511 U.S. 825, 835 (1994).

> The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive*

> *risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46. The Court fully acknowledges the seriousness of Plaintiff's HIV diagnosis; therefore, the remaining question is whether Dr. Sherman acted with deliberate indifference to Plaintiff's medical need?

Plaintiff claims that Dr. Sherman knew of his HIV status and "did not take any medical measures to insure that his infection would not become FULL BLOWN AIDS VIRUS." (Doc. 27 at 2). After reviewing the record in full, however, the Court finds Dr. Sherman was not deliberately indifferent to Plaintiff's medical needs.[7]

---

[7] Plaintiff's cited cases lend no support to his allegations in that each case is easily distinguishable from the facts of this action. See Foster v. Fulton Cnty., Ga., 223 F.Supp. 2d 1292, 1297 (N.D. Ga. 2002)(Inmate was denied his current HIV medications upon being booked into jail.); Maynard v. New Jersey, 719 F.Supp. 292 (D.N.J. 1989) (Inmate died, and § 1983 action ensued against physician after treating inmate for a common cold, that was undiagnosed AIDS, with throat lozenges and Tylenol despite

9

Upon entering BCSCC, Plaintiff's health history was assessed, including his HIV positive status, but he was asymptomatic at that time. (Doc. 36-1 at 21-22). Shortly thereafter, Plaintiff complained of "breakouts" and depression and claims Dr. Sherman should have known these were symptoms of HIV that needed further treatment. (Doc. 27 at 3). This argument, paired with the evidence in the record, does not provide a genuine issue of material fact and, for the reasons stated below, summary judgment should be granted.

First, Plaintiff presented to Defendant some of the same symptoms he had experienced for years, symptoms that previously never worsened his HIV condition. For example, Plaintiff had a documented history from 2004 through 2008 of hot and cold flashes, herpes outbreaks, and foot fungus during prior incarcerations at BCSCC, and no doctor indicated the need for intensive HIV treatment based on the complaints; Plaintiff never insisted his condition was worsening due to these issues, and his examinations at HIV clinics during this time period never denote that his HIV status is degenerating to the point of needing drug therapy

---

inmate physically collapsing twice.); Nolley v. Cnty. of Erie, 776 F.Supp. 715 (W.D.N.Y. 1991)(§ 1983 action for violation of inmate's privacy after being labeled as having AIDS and condition of confinement).

10

to slow the progression of HIV to AIDS. (See Doc. 21-2 at 6, 7-8, 10, 16, 22).

Second, Plaintiff alleges his depression was symptomatic of his worsening HIV condition and that Dr. Sherman's failure to recognize this was a constitutional violation. While depression is common in persons with HIV, given the totality of Plaintiff's circumstances, that he was incarcerated, suffered from genital herpes and hepatitis B, and had previously been released from suicide watch after having thoughts of self-harm following a court appearance, the Court cannot find the symptom of depression to be an obvious indication of Plaintiff's HIV status deteriorating. (Doc. 36-1 at 17). Furthermore, although Plaintiff requested treatment for his depression through sick calls and nurses' notes, he failed to mention any depression and denied being depressed on multiple occasions when examined by physicians. (Doc. 36-1 at 5, 14; Doc. 36-2 at 8-9). Dr. Sherman was concerned enough about Plaintiff's health that he referred Plaintiff to the HIV Clinic. However, the HIV specialist found no need in June of 2012 to begin any HIV drug treatment or any indication that Plaintiff's HIV status was declining. (See id. at 129 where HIV clinic nurse practitioner's treatment plan for Plaintiff includes herpes and acid reflux medications, a

follow-up appointment with a counselor and dietician, and postpones all laboratory tests.).

Third, and most importantly, even if another physician might have implemented more aggressive HIV treatment once Plaintiff presented with the claimed symptoms, that does not equate to deliberate indifference on the part of Dr. Sherman.  Each time Plaintiff was examined for "itchy bumps" or foot fungus, he was provided cream for the outbreak; in fact, on some occasions, he was even provided cream for the outbreaks without having to wait for an examination by the physician.  (Doc. 21-2 at 4, 44-45; Doc. 34-1 at 7-9, 11, 13, 16; Doc. 36-1 at 2, 5, 14, 16; Doc. 36-2 at 2).  There were only two instances where Plaintiff's bumps or rashes appeared to be HIV related. The first occasion, on May 7, 2012, Defendant Dr. Sherman prescribed an antibiotic and referred Plaintiff to the HIV clinic.  (Doc. 36-1 at 8).  On May 29, 2012, the second occasion, he was scheduled to been seen at the HIV clinic in two weeks, and Defendant Dr. Sherman prescribed ointment and waited for the HIV clinic appointment.  (Doc. 36-1 at 5).

All other complaints of bumps or rashes were related to genital herpes or foot fungus and were promptly treated as such.  The record is clear that Plaintiff received

12

medical treatment while incarcerated at BCSCC, and Defendant Dr. Sherman was not deliberately indifferent to Plaintiff's medical needs or, specifically, his HIV condition. At no time did Dr. Sherman recognize an HIV symptom, subjectively determine that harm would ensue if left untreated, and then fail to treat Plaintiff. Therefore, what Plaintiff is claiming in this action is negligence at best, <u>Estelle</u>, 429 U.S. at 106 (Deliberate indifference requires disregarding a known risk by conduct more than mere negligence.), and summary judgment should be granted. <u>See</u> <u>McDowell v. Brown</u>, 392 F.3d 1283, 1288 (11th Cir. 2004)(Summary judgment is proper when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case.").

**IV. CONCLUSION**

Based on the foregoing, it is recommended that the motion for summary judgment of Defendant Dr. Charles E. Sherman be granted and that Plaintiff's action against Defendant Sherman be dismissed with prejudice.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any

party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    DONE this 13th day of September, 2013.

                                  <u>s/BERT W. MILLING, JR.</u>
                                UNITED STATES MAGISTRATE JUDGE